UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTHONY PACALDO, ) | Case No.: 1:12-cv-01078 - LJO – JLT |
| ) | |
| Plaintiff, ) | ORDER GRANTING DEFENDANT'S MOTION |
| ) | TO COMPEL ARBITRATION |
| v. ) | |
| ) | |
| HALLIBURTON ENERGY SERVICES, INC., ) | (Doc. 12) |
| ) | |
| Defendant. ) | |
| ) | |

Halliburton Energy Services, Inc. ("Defendant" or "Halliburton") seeks to compel arbitration and stay this action initiated by Plaintiff Anthony Pacaldo ("Plaintiff"). (Doc. 12). Plaintiff filed his opposition to the motion on October 24, 2012 (Doc. 18), to which Defendant replied on October 30, 2012 (Doc. 19). The Court heard oral arguments of counsel on November 7, 2012. For the following reasons, Defendant's motion to compel arbitration is **GRANTED**.

**I.     Relevant Factual and Procedural History**

Plaintiff alleges "he was exposed to radiation in excess of allowable regulatory and statutory limits, including but not limited to radiation from Cesium-137" while an employee of Halliburton. (Doc. 2 at 1). According to Plaintiff, "named and unnamed Defendants failed to identify high-levels of radiation and the risks of potential exposure, and as a result, failed to provide Plaintiff with proper safety protection and other equipment, and implement proper safety procedures to safely work as a Service Operator." *Id.* at 4.

For these actions, Plaintiff filed a complaint on July 2, 2012, asserting causes of action including assault, battery, and intentional infliction of emotional distress by Halliburton and the unnamed defendants. (Doc. 2 at 6-7, 14). In addition, Plaintiff asserted the "Doe" defendants are liable for negligence; negligence per se; failure to warn; defect in design, manufacturing, and assembly; breach of an implied warranty; breach of express warranty; and strict liability for ultrahazardous activities. *Id.* at 7-13. Notably, Plaintiff provided a sparse description of the Doe defendants but noted alleged, "each Defendant was the agent, representative and/or employee of each of the remaining Defendants and was acting within the course and scope of said agency, representation and/or employment." *Id.* at 3.

On August 2, 2012, Halliburton filed its Answer to the complaint, including in its affirmative defenses that an agreement to arbitrate governed the claims presented by Plaintiff. (Doc. 9 at 9-10). According to Halliburton,

> Plaintiff has contractually agreed to submit all claims related in any way to his employment with Halliburton, including personal injury claims occurring at or in the vicinity of his workplace, to final and binding arbitration as provided for under the Halliburton Dispute Resolution Program…. Plaintiff's agreement to arbitrate applies to claims asserted against Halliburton itself, as well as to claims asserted against Halliburton's affiliates, employees, agents, contractors and customers. Plaintiff has agreed that such arbitration before an arbitrator appointed under the auspices of the American Arbitration Association or other designated neutral organization shall be the exclusive forum for the determination of all claims asserted in this action.

*Id.* Asserting the initiation of the lawsuit constitutes a breach of Plaintiff's agreement to arbitrate his claims, Halliburton filed its motion to compel arbitration pursuant to the Federal Arbitration Act on October 1, 2012. (Doc. 12).

## II.     Legal Standard

The Federal Arbitration Act ("FAA") provides that written arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. A party seeking to enforce arbitration agreement may petition the Court for "an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4.

The Court's role in applying the FAA is "limited to determining whether a valid agreement to arbitrate exists and, if so, whether the agreement encompasses the dispute as issue." *Lifescan, Inc. v. Premier Diabetic Servs., Inc.*, 363 F.3d 1010, 1012 (9th Cir. 2004). To determine whether an arbitration agreement encompasses particular claims, the Court looks to the plain language of the agreement, and "[i]n the absence of any express provision excluding a particular grievance from arbitration . . . only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail." *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 584-86 (1960). Because the FAA "is phrased in mandatory terms," "the standard for demonstrating arbitrability is not a high one [and] a district court has little discretion to deny an arbitration motion." *Republic of Nicaragua v. Standard Fruit Co.*, 937 F.2d 469, 475 (9th Cir. 1991).

"[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983). As a result, arbitration should only be denied when "it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Tech., Inc. v. Communs. Workers of Am.*, 475 U.S. 643, 650 (1986). It is well-established that "arbitration provides a forum for resolving disputes more expeditiously and with greater flexibility than litigation." *Lifescan*, 363 F.3d at 1011.

### III.   The Arbitration Agreement and Terms

On January 1, 1998[1], Halliburton implemented a dispute resolution program for "all Halliburton employee disputes." (Doc. 13-1 at 27). Employees were notified of the program in

---

[1] Halliburton mailed the materials again in March 1998 due to the discovery of "typographical and other errors." (Doc. 13-1 at 65) Again in 1999, Halliburton sent out a revised version of the documents. (Doc. 13-2 at 5) Moreover, once more in 2001 and 2008, Halliburton mailed revised sets of documents. (Doc. 13-3; Doc. 13-4 at 5)
   Each version of the plan provided that it included Halliburton's "directors, officers, employees, and agents . . ." (Doc. 13-1 at 54; Doc. 13-1 at 69; Doc. 13-2 at 44; Doc. 13-3 at 34; Doc. 13-4 at 17) Beginning with the 1999 version, the plan included also "any entity or person alleged to have joint and several liability concerning the dispute." (Doc. 13-2 at 44; Doc. 13-3 at 34; Doc. 13-4 at 18.
   Every version of the plan indicated that personal injuries came within the ambit of the plan and broadly described the term "dispute" to include "all legal and equitable claims, demands, and controversies, of whatever nature or kind, whether in contract, tort, under statute or regulation, or some other law, between persons bound by the Plan . . ." (Doc. 13-1 at 55; Doc. 13-1 at 70; Doc. 13-2 at 45; Doc. 13-3 at 34; Doc. 13-4 at 17-18) It also included injuries suffered before the plan was implemented. (Doc. 13-3 at 34; Doc. 13-4 at 18)
   Therefore, the significant terms at issue here have not changed from the time the Plan was implemented.

1  November 1997 through the mail, which included a cover letter explaining the program's adoption, a
2  booklet entitled "Resolution: The Halliburton Dispute Resolution Program," a tri-fold summary
3  brochure, and a pamphlet entitled "Dispute Resolution Plan and Rules" that contained the formal
4  statement of the program and its rules.  Miner Decl. ¶ 3; Davidson Decl. ¶ 3 (*see also* Doc. 13-1 at 23-
5  65).  In the cover letter, employees were informed: "Your decision to . . . continue your current
6  employment after January 1, 1998 means that you have agreed to and are bound by the terms of this
7  Program as contained in the Plan Document and Rules . . ." (Doc. 13-1 at 23).  Likewise, the booklet
8  informed employees: "[I]f you accept or continue your job at Halliburton after that date, you will
9  agree to resolve all legal claims against Halliburton through this process instead of through the court
10 system." *Id.* at 42.  Further, the booklet explained assent to the terms "means you waive any rights
11 you may have to bring a lawsuit against your employer and to a jury trial regarding any such dispute . .
12 ." *Id.* at 48 (emphasis omitted).

13        Disputes covered by Halliburton's dispute resolution program ("the Program") include "any
14 legal or equitable claim, demand or controversy in tort, in contract, under statute, or alleging violation
15 of any legal obligation between persons bound by the Plan . . ." (Doc. 13-1 at 55).  Under the Program,
16 employees have four avenues to seek resolution of a dispute: (1) the "Open Door Policy," which allow
17 an employee to present a concern to an immediate supervisor, another individual at any level of the
18 organization, or the Employee Relations Department; (2) a conference with a company representative
19 and program facilitator; (3) mediation with the American Arbitration Association or Judicial
20 Arbitration and Mediation Services; and (4) arbitration, if the employee's dispute involves a legally
21 protected right.  (Doc. 13-1 at 29).  Halliburton explained:  "Arbitration is the process in which a
22 dispute is presented to a neutral third party, the arbitrator, for a final and binding decision.  The
23 arbitrator makes the decision after both sides present their arguments." *Id.* at 40.

24        Under the terms of the Program, employees are required to pay a $50 fee to initiate arbitration,
25 and Halliburton will "pay any costs that exceed this $50 fee."  (Doc. 13-1 at 40).  In addition,
26 Halliburton "will pay the major part of [the employee's] legal fees . . . up to a maximum of $2,500.
27 *Id.* at 41.  If an employee elects to not have legal representation at the arbitration, "the Company will
28 also participate without a lawyer." *Id.*  Halliburton explained that if an employee filed a lawsuit

4

regarding a workplace issue in violation of the arbitration agreement, Halliburton will ask the court to dismiss it and will refer it to the Dispute Resolution Program." *Id.* at 45.

## IV. Discussion and Analysis

### A. Validity of the arbitration agreement

When determining whether a valid and enforceable agreement to arbitrate has been established for the purposes of the FAA, the Court should apply "ordinary state-law principles that govern the formation of contracts to decide whether the parties agreed to arbitrate a certain matter." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *Circuit City Stores v. Adams*, 279 F.3d 889, 892 (2002). Here, the parties agree the law of the state of California governs the determination of whether the agreement is valid. (Docs. 13 at 14, 18 at 5).

Pursuant to California contract law, the elements for a viable contract are "(1) parties capable of contracting; (2) their consent; (3) a lawful object; and (4) sufficient cause or consideration." *United States ex rel. Oliver v. Parsons Co.*, 195 F.3d 457, 462 (9th Cir. 1999) (citing Cal. Civ. Code § 1550; *Marshall & Co. v. Weisel*, 242 Cal. App. 2d 191, 196 (1966)). The Supreme Court explained, an agreement to arbitrate may be "invalidated by generally applicable contract defenses, such as fraud, duress, or unconscionability, but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1746 (2011).

Under California law, an arbitration agreement may only be invalidated for the same reasons as other contracts. Cal. Code Civ. Proc. § 1281. For example, a contract "is unenforceable if it is both procedurally and substantively unconscionable." *Davis v. O'Melveny & Myers*, 485 F.3d 1066, 1072 (9th Cir. 2007)). Procedural unconscionability focuses on "oppression and surprise," while substantive unconscionability focuses upon "overly harsh or one-sided results." *Stirlen v. Supercuts, Inc.*, 51 Cal.App.4th 1519, 1532 (1997) (citations omitted). Both forms of unconscionability must be present in order for a court to find a contract unenforceable, but it is not necessary that they be present in the same degree. *Davis*, 485 F.3d at 1072; *Stirlen*, 51 Cal. App. 4th at 1532. Consequently, "[c]ourts apply a sliding scale: 'the more substantively oppressive the contract term, the less evidence

of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa.'" *Id.* (quoting *Armendariz*, 24 Cal. 4th 83 at 99).

Defendant contends the arbitration agreement is valid under general principles of contract law. (Doc. 13 at 14-16). According to Defendant, Plaintiff consented to the terms of the arbitration through his continued employment with the company, and the dispute resolution program was a condition of his employment. *Id.* at 14 (citing *Asmus v. Pacific Bell*, 999 P.2d 71, 78–79 (Cal. 2000)). In addition, Defendant argues the agreement between the parties "is supported by consideration" due to the mutuality of obligation binding both Halliburton and Plaintiff to arbitrate employment-related disputes. *Id.* at 15 (citing *Bleecher v. Conte*, 698 P.2d 1154, 1156 (Cal. 1981)). On the other hand, Plaintiff asserts, "the alleged arbitration agreement is invalid" because it "is procedurally and substantively unconscionable." (Doc. 18 at 4) (citing *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal.4th 83, 114 (2000)).

1.     Procedural Unconscionability

The threshold issue in for procedural unconscionability "is whether the subject arbitration clause is part of a contract of adhesion." *Stirlen*, 51 Cal. App. 4th at 1532; *see also Soltani v. W. & S. Life Ins. Co.*, 258 F.3d 1038, 1042 (9th Cir. 2001). A contract of adhesion "is a standardized contract, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it." *Graham v. Scissor-Tail, Inc.*, 28 Cal. 3d 807, 817 (1981). Accordingly, the Court must examine "the manner in which the contract was negotiated and the circumstances of the parties at that time." *Kinney v. United Healthcare Services*, 70 Cal. App. 4th 1322, 1327 (1999). Specifically, the Court questions whether the contract was "imposed on employees as a condition of employment." *Soltani*, 258 F.3d at 1042.

In general, under California law, it is "procedurally unconscionable to require employees, as a condition of employment, to waive their right to seek redress of grievance in a judicial forum." *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1170 (9th Cir. 2003); *see, e.g., Armendariz*, 24 Cal.4th at 113 (explaining an arbitration agreement was procedurally unconscionable because it was imposed on employees as a condition of employment, and there was no opportunity for them to negotiate); *Aral v. Earthlink, Inc.*, 134 Cal.App.4th 544, 557 (2005) (an arbitration clause on a "take it or leave it" basis

6

demonstrates "quintessential procedural unconscionability"); *Martinez v. Master Protection Corp.*, 118 Cal. App. 4th 107 (2004) (finding an arbitration agreement procedurally unconscionable because it was a prerequisite of employment and the employee did not have an "opportunity to negotiate or refuse to sign the arbitration agreement"); *Flores v. Transamerica HomeFirst, Inc.*, 93 Cal. App. 4th 846, 853 (Ct. App. 2001) ("A finding of a contract of adhesion is essentially a finding of procedural unconscionability").

When Halliburton implemented its dispute resolution program, the company issued notice in November 1997 (Davidson Decl. ¶ 3, Exh. C-1; Doc. 13-1 at 20-23). The notice explained:

> Effective January 1, 1998 all Halliburton employee disputes will be referred for resolution through the Halliburton Dispute Resolution Program. This means that, after January 1st, both you and the Halliburton company by which you are employed will be bound to use the Dispute Resolution Program as the primary and sole means of dispute resolution. …
>
> This program is binding on all U.S. employees and Halliburton. Your decision to accept employment or continue your current employment after January 1, 1998 means you have agreed to and are bound by the terms of this Program as contained in the Plan Document and Rules.

(*Id.*; Doc. 13-1 at 23).[2] In addition, Halliburton provided a booklet entitled "Resolution: The Halliburton Dispute Resolution Program," as well as a separate booklet explaining the plan and its rules. *Id.* at 20, 54-63. With this notice, there was no surprise to Plaintiff because the arbitration agreement was not concealed among other contractual terms, and the terms were conveyed clearly to Plaintiff. On the other hand, the agreement appears to be oppressive because Plaintiff was not given an opportunity to negotiate the terms.

As stated by Defendant, "Plaintiff had the option of continuing employment, and thereby accepting [Halliburton's] announced change to his terms of employment, or resigning." (Doc. 13 at 15). Because Halliburton offered Plaintiff the choices to either accept the arbitration agreement or seek employment elsewhere, the company was in a stronger bargaining position than Plaintiff. *See Armendariz*, 24 Cal. 4th at 115 (explaining with arbitration agreements, "the economic pressure

---

[2] Likewise, the most recent notice regarding the dispute resolution program, dated January 30, 2009, stated the arbitration agreement "is a condition of your employment, and by continuing (or accepting) employment upon receipt of this notification, you are renewing your agreement to be bound by the [dispute resolution program]." (Doc. 13-4 at 11).

exerted by employers on all but the most sought-after employees may be particularly acute, for the arbitration agreement stands between the employee and necessary employment, and few employees are in a position to refuse a job because of an arbitration agreement"). Thus, the agreement was offered on a "take it or leave it" basis, and was procedurally unconscionable. *Circuit City Stores, Inc. v. Adams,* 279 F.3d 889, 893 (9th Cir. 2002).

### 2. Substantive Unconscionability

"Substantive unconscionability addresses the fairness of the term in dispute." *Szetela v. Discover Bank*, 97 Cal. App. 4th 1094, 1100 (Ct. App. 2002). While "parties are free to contract for asymmetrical remedies and arbitration clauses of varying scope," substantive unconscionability "limits the extent to which a stronger party may, through a contract of adhesion, impose the arbitration forum on the weaker party without accepting the forum for itself." *Ting v. AT&T*, 319 F.3d 1126, 1149 (9th Cir. 2003) (quoting *Armendariz*, 24 Cal. 4th at 118). Thus, the focus of the Court's inquiry is whether an agreement is one-sided and will have an overly harsh effect on the party not given an opportunity to negotiate its terms. *Flores*, 93 Cal. App. 4th at 854. The Ninth Circuit instructs courts applying California law to arbitration agreements "look beyond facial neutrality and examine the actual effects of the challenged provision." *Ting*, 319 F.3d at 1149; *see, e.g., Ingle*, 328 F.3d at 1180 (finding an arbitration agreement substantively unconscionable upon review of the agreement's provisions, including claims subject to arbitration, its statute of limitations, class actions, fee and cost-splitting arrangements, remedies available, and termination/modification of the agreement).

#### a. Claims subject to arbitration

An arbitration agreement that "compels arbitration of the claims employees are most likely to bring against [the employer] but exempts from arbitration the claims [the employer] is most likely to bring against its employees" is substantively unconscionable. *Ferguson v. Countrywide Credit Indus.*, 298 F.3d 778, 785 (2002) (quoting *Mercuro v. Superior Court*, 96 Cal. App. 4th 167, 175-76 (Ct. App. 2002). For example, in *Ferguson* and *Mercuro*,[3] the courts found Countrywide's arbitration

---

[3] Both cases involved the arbitration agreement of Countrywide Credit Industries. *See Ferguson*, 298 at 784 ("During oral argument, counsel for Countrywide conceded that the provisions of the arbitration agreement in the present case are the same as the provisions of the arbitration agreement at issue in *Mercuro*").

8

agreement was substantively unconscionable, because it excluded claims "for intellectual property violations, unfair competition and/or the use and/or unauthorized disclosure of trade secrets or confidential information." *Ferguson*, 298 F.3d at 785 *Mercuro*, 96 Cal. App. 4th at 176.

Here, the Program encompasses "all Halliburton employee disputes." (Doc. 13-1 at 23). Specifically, the "Plan and Rules" published in 2008 explain disputes encompassed include:

> All legal or equitable claims, demands, and controversies, of whatever nature or kind, whether in contract, tort, under statute or regulation, or some other law, between persons bound by the Plan . . . including, but not limited to, any matters with respect to:
>
> 1. The Plan;
> 2. The employment or potential re-employment of an Employee, including the terms, conditions, or termination of such employment with the Company;
> 3. Employee benefits or incidents of employment with the Company; or
> 4. Any other matter related to the relationship between the Employee and the Company including, by way of example and without limitation, allegations of discrimination based on race, sex, religion, national origin, age, veteran status or disability; sexual or other kinds of harassment; wrongful discharge; workers' compensation retaliation; defamation; infliction of emotional distress; or status, claim, or membership with regard to any employment benefit plan.
> 5. An Applicant's application for employment and the Company's actions and decisions regarding such application;
> 6. Any prior resolution or settlement of a Dispute between Parties subject to the Plan; and
> 7. Any personal injury or death allegedly incurred in or about a Company workplace or on Company time.

(Doc. 13-4 at 18). Further, the Plan sets forth that it "does not apply to claims for workers compensation benefits or unemployment compensation benefits." *Id.* at 19. On the other hand, unlike in *Armendariz*, the Plan does not exempt Halliburton from arbitrating disputes it has with the employee. The Plan notes that all disputes "between the persons bound by the Plan" are subject to arbitration. *Id*. at 18.

Nevertheless, Plaintiff argues the claims subject to arbitration are substantively unconscionable, because the Program forces him to give up statutory rights to litigate claims for intentional torts. (Doc. 18 at 8-11). According to Plaintiff, mailing the plan and its rules did not allow for him "to knowingly waive his right to civil action, including a jury trial, established by Labor Code Section 3602(b)(1)." *Id.* at 8 (citing *Nelson v. Cyprus Bagdad Copper Corp.*,119 F.3d 756, 762 (9th

Cir. 1997) (the unilateral promulgation by an employer of arbitration provisions in an Employee Handbook does not constitute a 'knowing agreement' on the part of an employee to waive a statutory remedy provided by a civil rights law"). In response, Defendant contends Plaintiff's position "is contrary to both well-established federal and California law." (Doc. 19 at 6) (citing *Perry v. Thomas*, 482 U.S. 483, 493 (1987); *Madden v. Kaiser Foundation Hospitals*, 17 Cal.3d 699, 712-714 (1976)).

In *Nelson*, the Ninth Circuit examined whether an arbitration agreement required a "knowing agreement" for a claim under the Americans with Disabilities Act ("ADA"). The Court noted: "Congress can and sometimes does preclude waivers of a plaintiff's rights under a particular statute. [Citation]. . . Just as Congress may entirely preclude a waiver of the plaintiff's statutory rights, it may create other more limited restrictions on the enforcement of arbitration agreements." *Id.*, 119 F.3d at 760-61 (citing *Kuehner v. Dickinson & Co.*, 84 F.3d 316, 319 (9th Cir. 1996)). The Court concluded that Congress required "a knowing agreement to arbitrate disputes" under Title VII and the ADA. *Id.* at 761. In this case, Plaintiff does not raise a civil rights cause of action under Title VII or the ADA, and has not demonstrated a legislative intent to forbid arbitration for tort claims. Accordingly, the inclusion of tort claims in the arbitration agreement is not substantively unconscionable.

Moreover, as noted above, the claims subject to arbitration include claims by employees *or* Halliburton. Defendant has not excluded claims it may bring against an employee from the arbitration agreement. Accordingly, the claims subject to arbitration do not appear unconscionable. *See Ferguson*, 298 F.3d at 784, n.6 (explaining substantive unconscionability may be demonstrated when an employer seeks to enforce "what is essentially a unilateral arbitration agreement" because the company excludes claims it may bring against the employee from the agreement).

### b. *Filing fees and cost arrangement*

When arbitration is a condition of employment, an employer "cannot generally require the employee to bear any *type* of expense that the employee would not be required to bear . . . in court." *Armendariz*, 24 Cal. 4th at 110 (emphasis in original). A scheme that makes each party bear half the costs of the arbitration "alone would render an arbitration agreement unenforceable." *Circuit City v. Adams*, 279 F.3d 889, 894 (9th Cir. 2002). For example, the Ninth Circuit found a cost-splitting provision substantively unconscionable when the agreement forced the plaintiffs to pay the filing fee

10

up to a maximum of $125.00 and share costs equally after the first day of arbitration. *Ferguson*, 298 F.3d at 781*; see also Ingle*, 328 F.3d at 1177-78 (finding a provision substantively unconscionable that stated "each party shall pay one-half of the costs of arbitration following the issuance of the arbitration award").

In this case, Halliburton's program requires an employee initiating the arbitration to pay a fee of $50. (Doc. 13-4 at 28). Beyond this filing fee, "Employee/Applicant Parties shall not be responsible for payment of fees and expenses of proceedings . . . " (*Id.*), although, notably, the "Legal Consultation Plan" provided in the "Program Options," requires Halliburton to "pay up to a maximum of $2,500 of [the employee's] legal fees." (Doc. 12-4 at 39) In addition, the arbitrator is authorized to "allow a prevailing Employee or Applicant reasonable attorney's fees, expert witness' fees, and other costs which may be allowable under the Federal Rules of Civil Procedure as part of the award." *Id.* at 21. Thus, the provisions governing the initiation fee and costs do not require employees to incur any type of costs they would otherwise avoid in court. Thus, the Court concludes the fee/cost arrangement under the Plan is not substantively unconscionable.

### c. Statute of limitations

When evaluating a statute of limitations set forth in arbitration agreement, "[t]he critical question is whether 'the period fixed is so unreasonable so as to show imposition or undue advantage in some way.'" *Jackson v. S.A.W. Entm't Ltd.*, 629 F. Supp. 2d 1018, 1028 (N.D. Cal. 2009) (quoting *Moreno v. Sanchez*, 106 Cal. App. 4th 1415, 1430 (2003). Generally, provisions strictly requiring employees to bring all claims within one year are unconscionable. *Adams*, 279 F.3d at 894-95.

Here, the rules provide an arbitration proceeding must be initiated "within one year after the event which gives rise to the Dispute or the time allowed by applicable law for the filing of a judicial complaint, whichever is longer." (Doc. 13-4 at 28). Accordingly, the arbitration agreement does not impose a shortened statute of limitations upon the parties, and there is no imposition or undue advantage. Consequently, the statute of limitations provision is not substantively unconscionable.

### d. Remedies

Remedy provisions that "fail[] to provide for all the types of relief that would otherwise be available in court" by limiting an employee's total and punitive damages are substantively

11

unconscionable. *Adams*, 279 F.3d at 895 (citing *Cole v. Burns Int'l Sec. Servs.,* 105 F.3d 1465, 1482 (9th Cir. 1997)). The Program "Plan and Rules" provide the arbitrator has "the authority to determine the applicable law and to order any and all relief, legal or equitable, including punitive damages, which a Party could obtain from a court of competent jurisdiction on the basis of the claims made in the proceedings." (Doc. 13-4 at 21). Therefore, the relief provided does not improperly limit available remedies, and the provision is not substantively unconscionable.

          *e.*      *Unilateral amendment and termination*

When provisions of an arbitration agreement permit an employer to unilaterally amend or terminate the agreement, even with written notice to employees, the provision is substantively unconscionable. *See, e.g., Ingle*, 328 F.3d at 1179; *Ramirez-Baker v. Beazer Homes, Inc.*, 636 F. Supp. 2d 1008, 1021-22 (E.D. Cal. 2008). The Ninth Circuit explained a provision granting an employer unilateral power to amend or terminate an arbitration agreement, even with written notice to employees, proscribes an employee's ability negotiate and "embeds its adhesiveness." *Ingle*, 328 F.3d at 1179.

Here, the "Plan and Rules" provide amendment or termination of the Program may occur "at any time by giving at least 30 days' notice to current Employees." (Doc. 13-4 at 20). No amendments would apply to a dispute "which arises prior to the effective date of the amendment." *Id.* Therefore, Halliburton's ability to avoid pending claims by amendment is limited. Nevertheless, Halliburton enjoys the right to amend or terminate the Program, and "the arbitration agreement affords no such power to employees." *See Ingle*, 328 F.3d at 1179. Consequently, the provision is substantively unconscionable.

          *f.*      *Agreement as a whole*

California law provides: "If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result." Cal. Civ. Code § 1670.5(a). Refusing to enforce an arbitration agreement is appropriate "only when an agreement is permeated by unconscionability." *Armendariz*, 24 Cal.4th 83 at 122 (internal quotation

1  marks omitted).  Courts often look to whether the offending provisions "indicate a systematic effort to
2  impose arbitration on an employee not simply as an alternative to litigation, but as an inferior forum
3  that works to the employer's advantage." *Id.* at 124; *see also Ferguson*, 298 F.3d at 787-88.  For
4  example, the Ninth Circuit found an arbitration agreement was "permeated by unconscionable
5  clauses" where there was a "lack of mutuality regarding the type of claims that must be arbitrated, the
6  fee provision, and the discovery provision."  *Ferguson*, 298 F.3d at 788.

7        In this agreement, the only provisions of the Program appearing substantively unconscionable
8  are those granting unilateral amendment and termination of the dispute resolution program.  However,
9  the "Plan and Rules" provisions regarding fees and costs and the statute of limitations, are not
10 permeated by unconscionability and do not establish an inferior forum that works to Defendant's
11 advantage.  *See Armendariz*, 24 Cal. 4th 83 at 122.  Significantly, it does not appear the provisions
12 regarding amendment and termination are relevant to Plaintiff's claims, and may be severed from the
13 agreement.  *See, e.g., Grabowski v. C.H. Robinson Co.*, 817 F. Supp. 2d 1159 (S.D. Cal. 2011)
14 (finding three substantively unconscionable provisions could be severed from an arbitration agreement
15 which was not "permeated by unconscionability," thus rendering the agreement enforceable); *Stacy v.*
16 *Brinker Rest. Corp.*, 2012 U.S. Dist. LEXIS 150345, at * 31-32 (E.D. Cal. Oct. 18. 2012) (explaining
17 the single substantively unconscionable provision could be severed because it was "collateral to the
18 Agreement and does not permeate the Agreement with unconscionability").  Accordingly, the
19 provisions governing amendment and termination may be severed, and the arbitration agreement
20 enforced because the terms, taken as a whole, do not appear substantively unconscionable.

21       **B.**    **The arbitration agreement encompasses the disputes at issue.**

22       To determine whether an arbitration agreement encompasses particular claims, the Court looks
23 to the plain language of the agreement, and "[i]n the absence of any express provision excluding a
24 particular grievance from arbitration . . . only the most forceful evidence of a purpose to exclude the
25 claim from arbitration can prevail." *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*,
26 363 U.S. 574, 584-86 (1960).

27       As an initial matter, the parties disagree about whether the arbitration agreement applies to
28 Plaintiff's claims against unnamed, "Doe" defendants.  Plaintiff contends he "did not bargain to give

up his California statutory right to sue third party tortfeasors." (Doc. 18 at 9). On the other hand, Defendant argues the arbitration agreement governs the claims alleged against the Doe defendants, because Plaintiff alleges each defendant "was the agent, representative and/or employee" of Halliburton and, as a result, the Doe defendants are a part of the company for purposes of the arbitration program. (Doc. 19 at 9).

Significantly, the Supreme Court explained, "Parties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy. *Rent-A-Center, W., Inc. v. Jackson*, 130 S. Ct. 2772, 2779-80 (2010). Here, under the terms of the Program, the parties agreed to arbitrate any dispute related to the Plan, which includes disputes relating to the enforcement or interpretation of its provisions, and "[a]ny personal injury . . . allegedly incurred in or about a Company workplace or on Company time." (Doc. 13-4 at 18). Further, the Plan provides that its provisions "shall be applicable to all Disputes between Employees and the Company's clients, customers, contractors, and vendors." *Id.* at 19. Based upon these broad specifications, it is clear that the issues at dispute–including whether the Agreement is enforceable as to the unnamed Doe defendants–are encompassed within the arbitration agreement.

## ORDER

Plaintiff and Defendant entered into a valid arbitration agreement, which encompasses the issues in dispute. As a result, "there is a presumption of arbitrability" and motion to compel arbitration should not be denied. *See AT&T Tech., Inc.*, 475 U.S. at 650. Accordingly, THE Court **ORDERS**:

1. The amendment and termination clauses is severed from the Program plan;
2. Defendants' motion to compel arbitration is **GRANTED**;
3. The matter is **STAYED**[4] to allow the completion of the arbitration; and

///

///

---

[4] On November 7, 2012, the Court ordered the parties to file supplemental briefing related to the issue of whether this matter should be stayed or dismissed. (Doc. 20) On November 8, 2012, Defendants filed their supplemental brief indicating that they believed that a stay was appropriate. (Doc. 21) Though Plaintiff urged this approach at the hearing, he failed, without any explanation, to file a supplemental brief.

4. The Court retains jurisdiction to confirm the arbitration award and enter judgment for the purpose of enforcement.

IT IS SO ORDERED.

Dated: **November 26, 2012**        **/s/ Jennifer L. Thurston**
UNITED STATES MAGISTRATE JUDGE